# Exhibit A

# Pleadings from *Griner v. Synovus Bank*, Civil Action No. 10C-11235-3, in The State Court of Gwinnett County, State of Georgia

# Summons and Sherriff' Entry of Service

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

CIVIL ACTION
NUMBER **10C-11235-3**

**THOMAS GRINER and FERN COHN,**
**on behalf of themselves and all persons**
**similarly situated,**

                    **PLAINTIFFS**

          **VS.**

**SYNOVUS BANK, d/b/a**
**Bank of North Georgia, Columbus Bank**
**and Trust Company, AFB&T, Sea Island**
**Bank, SB&T Bank, CB&T Bank of**
**Middle Georgia, The Coastal Bank of**
**Georgia, First State Bank and Trust**
**Company of Valdosta, Commercial Bank,**
**Georgia Bank & Trust, Bank of Coweta,**
**First Community Bank of Tifton, Citizens**
**First Bank, Commercial Bank & Trust**
**Company of Troup County, and Cohutta**
**Banking Company,**

                    **DEFENDANT**

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

          You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiffs' attorney, whose name and address is:

MICHAEL B. TERRY, ESQ.
STEVEN J. ROSENWASSER, ESQ.
JASON J. CARTER, ESQ.
MARY W. PYRDUM, ESQ.
BONDURANT, MIXSON & ELMORE, LLP
3900 ONE ATLANTIC CENTER
1201 W. PEACHTREE STREET
ATLANTA, GEORGIA 30309

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the compliant.

This ___30___ day of ___July___, 20 _10_.

                    Tom Lawler
                    Clerk of State Court

          By _Donna Benson_
                    Deputy Clerk

Civil Action No. **10C - 11235- 3**

Date Filed __7/30/2010__

| Magistrate Court | ☐ |
| Superior Court | ☐ |
| State Court | XⅨXXX |

Georgia, GWINNETT COUNTY

Attorney's Address
MICHAEL B. TERRY, ESQ.
BONDURANT MIXSON & ELMORE, LLP
3900 ONE ATLANTIC CENTER
1201 W. PEACHTREE STREET
ATLANTA GA  30309

THOMAS CRINER, ET AL.
_____
**Plaintiff**

VS.

Name and Address of Party to be Served

SYNOVUS BANK

C/O CT CORPORATION, ITS REGISTERED AGENT

40 TECHNOLOGY PARKWAY SOUTH #300

NORCORSS GA  30092

SYNOVUS BANK
_____
**Defendant**

_____
**Garnishee**

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐

I have this day served the defendant _____ personally with a copy
of the within action and summons.

**NOTORIOUS** ☐

I have this day served the defendant _____ by leaving
a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows

age, about _____ years; weight, about _____ pounds, height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☑

Served the defendant *Synovus Bank* a corporation
by leaving a copy of the within action and summons with *Aisha Smith Reg. Agent*
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐

Diligent search made and defendant _____
not to be found in the jurisdiction of this Court.

This __3__ day of __Aug.  2010__

_____ DEPUTY

_____
GWINNETT COUNTY, GEORGIA

SHERIFF DOCKET _____   PAGE _____

WHITE. Clerk     CANARY: Plaintiff Attorney     PINK: Defendant

SC-2 Rev.86

# Complaint

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

### IN THE STATE COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

2010 JUL 30  PM 3: 28

TOM LAWLER, CLERK

| | |
|---|---|
| THOMAS GRINER and FERN COHN, on behalf of themselves and all persons similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| SYNOVUS BANK, d/b/a Bank of North Georgia, Columbus Bank and Trust Company, AFB&T, Sea Island Bank, SB&T Bank, CB&T Bank of Middle Georgia, The Coastal Bank of Georgia, First State Bank and Trust Company of Valdosta, Commercial Bank, Georgia Bank & Trust, Bank of Coweta, First Community Bank of Tifton, Citizens First Bank, Commercial Bank & Trust Company of Troup County, and Cohutta Banking Company, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendant. | ) ) |

CIVIL ACTION

FILE NO. ___10C - 11235- 3___

## COMPLAINT

Plaintiffs Thomas Griner and Fern Cohn, on behalf of themselves and all persons

similarly situated, file this Complaint against Defendant Synovus Bank ("Synovus").  Plaintiffs

respectfully show the Court as follows:

### NATURE OF THE ACTION

1.

This is an action to recover damages incurred as a result of Synovus's unlawful conduct

in collecting from Synovus Bank customers interest far in excess of the limits permitted for such

transactions by Georgia law.

787439.1

2.

Synovus's unlawful conduct occurs in the administration of its automated overdraft programs ("Automated Overdraft Programs") in connection with its "POS/debit" and automated-teller machine ("ATM") cards (each a "Bank Card" and collectively "Bank Cards"), which Bank Cards Synovus customers use to access money in their Synovus accounts.

3.

In a typical transaction in connection with Synovus's Automated Overdraft Program, a Synovus customer attempts to use his or her Bank Card to make a purchase (or withdraw cash) in an amount for which such customer's then-available account balance is insufficient.

4.

The amount by which such customer's then-available account balance is insufficient may be very small. For example, a customer may attempt to use his or her Bank Card to purchase a cup of coffee, and his or her then-available account balance may be insufficient by as little as $1 or even $.01.

5.

According to Synovus's written, standardized policies and procedures (Synovus's "Procedures"), rather than notifying the customer that he or she has insufficient money to cover the transaction and declining the transaction, Synovus will (a) automatically advance to the customer the amount of money needed to close the transaction (in the example above, the $1 or $.01 to purchase the coffee) and (b) approve the transaction. This gives rise to an overdraft in the customer's account (an "Overdraft").

787439.1

2

6.

Synovus then automatically charges the customer an "overdraft fee" in an amount up to $36 (an "Overdraft Fee").

7.

Synovus only charges an Overdraft Fee if it advances its money to the customer to close the proposed transaction. Thus, in the example above, if the customer has sufficient money to cover the coffee purchase, Synovus does not charge the customer an Overdraft Fee. Similarly, if the customer has insufficient money to cover the coffee purchase and Synovus declines the transaction, it does not charge the customer an Overdraft Fee. But, if the customer is short by $.01 and Synovus advances the $.01, then Synovus charges the customer an Overdraft Fee.

8.

Overdraft transactions between Synovus and its customers are entirely automated. Indeed, from advancing the Overdraft to collecting the Overdraft, Overdraft Fee and other related charges, Synovus relies upon automated information-technology systems to execute each transaction, and such systems were in place well before the Overdraft took place. As a result, and as described below, Synovus renders no services in connection with its execution of an Overdraft transaction. Yet, Synovus charges customers up to a $36 Overdraft Fee and other related charges per Overdraft.

9.

When, as here, a lender charges a borrower a fee for the use of money advanced, and the lender renders no services in connection with the fee, the "fee" is, in fact, "interest" charged by the lender for the use of the money advanced.

787439.1

3

10.

In the context of its Automated Overdraft Program, Synovus's Overdraft Fee is interest collected from its customer for Synovus's advance of money to close a proposed Bank-Card transaction for which such customer's then-available account balance was insufficient.

11.

Further, if a customer's account remains in overdraft for seven consecutive calendar days, then on the eighth (8th) calendar day Synovus charges such customer additional interest in the form of an overdraft collection fee in the amount of up to $35 ("Overdraft Collection Fee"). Synovus charges this additional fee even though it renders no services in connection with the fee.

12.

In the foregoing example, if the Overdraft is in the amount of $1, and the Overdraft ($1) and Overdraft Fee ($36) are paid on the sixth (6th) day after the Overdraft transaction, thereby avoiding the Overdraft Collection Fee, then the Overdraft Fee amounts to a 219,000% annual percentage rate ("APR") and an 18,000% monthly percentage rate ("MPR"). Further, if the Overdraft is in the amount of $.01, and the Overdraft ($.01) and Overdraft Fee ($36) are paid on the sixth (6th) day after the Overdraft transaction, thereby avoiding the Overdraft Collection Fee, then the Overdraft Fee amounts to a 21,900,000% APR and a 1,800,000% MPR.

13.

Alternatively, in the foregoing example, if the Overdraft is in the amount of $1, and the Overdraft ($1), Overdraft Fee ($36) and Overdraft Collection Fee ($35) are paid on the eighth (8th) day after the Overdraft transaction, then the Overdraft Fee and Overdraft Collection Fee combine to amount to a 323,938% APR and a 26,625% MPR. Further, if the Overdraft is in the amount of $.01, and the Overdraft ($.01), Overdraft Fee ($36) and Overdraft Collection Fee

($35) are paid on the eighth (8th) day after the Overdraft transaction, then the Overdraft Fee and Overdraft Collection Fee combine to amount to a 32,393,800% APR and a 2,662,500% MPR.

14.

Such rates grossly exceed Georgia's civil and criminal usury limits.

15.

Further, while any portion of a customer's Overdraft, Overdraft Fee or Overdraft Collection Fee remains outstanding and unpaid, and on each occasion that the customer deposits new money in his or her account, Synovus automatically seizes and converts such new money to the extent required to collect the full outstanding and unpaid amount of the Overdraft, Overdraft Fee, and Overdraft Collection Fee.

16.

For the reasons set forth in this Complaint, Plaintiffs and all other persons similarly situated are entitled to damages for the injuries they have suffered as a result of Synovus's unlawful conduct.  And, Plaintiffs hereby bring this action on behalf of themselves and all others similarly situated for: (1) violation of Georgia's civil usury laws, O.C.G.A. § 7-4-2; (2) violation of Georgia's criminal usury laws, O.C.G.A. § 7-4-18; and (3) conversion.

**DEMAND FOR PAYMENT**

17.

Plaintiffs, on behalf of themselves and all Class Members, as defined below, hereby demand that Synovus refund and repay to each Class Member all of the Overdraft Fees and other charges, including, but not limited to Overdraft Collection Fees, (a) collected by Synovus from each such Class Member (i) in connection with Synovus's administration of its Automated Overdraft Program and (ii) within four years of the date Plaintiffs filed this Complaint and

787439.1

5

(b) which Overdraft Fees and other charges combine to amount to an APR in excess of 16% and/or an MPR in excess of 5% on the related advance.

## PARTIES

18.

Plaintiff Thomas Griner is a natural person and a citizen of Georgia, residing in Clarke County, Georgia.

19.

Plaintiff Fern Cohn is a natural person and a citizen of Georgia, residing in Muscogee County, Georgia.

20.

Synovus is a Georgia corporation chartered by Georgia to operate as a Georgia state bank.

21.

Synovus may be served with process through its registered agent, Corporation Service Company, at 40 Technology Parkway South, #300, Norcross, Georgia 30092.

22.

Synovus does business in Georgia through its various bank divisions, including Bank of North Georgia, Columbus Bank and Trust Company, AFB&T, Sea Island Bank, SB&T Bank, CB&T Bank of Middle Georgia, The Coastal Bank of Georgia, First State Bank and Trust Company of Valdosta, Commercial Bank, Georgia Bank & Trust, Bank of Coweta, First Community Bank of Tifton, Citizens First Bank, Commercial Bank & Trust Company of Troup County, and Cohutta Banking Company.  These divisions are trade names of Synovus itself.

787439.1

## JURISDICTION

23.

This Court has original jurisdiction of this action because Synovus (a) is formed under the laws of Georgia and chartered to operate as a state bank in Georgia, (b) maintains its principal place of business in Georgia, (c) is registered to do business in Georgia, (d) is doing business in Georgia, (e) committed the unlawful acts in Georgia and (f) caused the resulting injury in Georgia.  Synovus is subject to the personal and general jurisdiction of this Court.

24.

This action presents no federal subject-matter jurisdiction, because Plaintiffs assert no claim under federal law and expressly disavow any claim under federal law.

25.

The Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d, is inapplicable to Plaintiffs' claims or otherwise to this action, because, among other reasons, the interest rate Synovus was permitted to charge under applicable state law was, at all times relevant to this action, more than one per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where Synovus is located; and therefore the FDIA is inapplicable to Plaintiffs' claims and presents no federal question or right of removal.

26.

The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), is inapplicable to Plaintiffs' claims or otherwise to this action because neither Plaintiffs nor any of the Class Members, as defined below, is a citizen of a state different from Synovus and Plaintiffs, the Class Members, as defined below, and Synovus are all citizens of Georgia.

787439.1

7

27.

This action presents no federal diversity jurisdiction because Plaintiffs, the Class Members, as defined below, and Synovus are all citizens of Georgia.

28.

Synovus is also prohibited from removing this action to federal court, because Synovus is a citizen of Georgia.  28 U.S.C. § 1441(b).

## VENUE

29.

Venue is proper in Gwinnett County, Georgia, pursuant to O.C.G.A. § 14-2-510(b)(1) because Synovus's registered agent and registered office is in Gwinnett County, Georgia.

30.

Synovus is a domestic corporation authorized to do business in Gwinnett County, Georgia.

31.

At all times relevant to this action, Synovus has been doing business in Gwinnett County, Georgia.

## COMMON FACTUAL ALLEGATIONS

32.

This is a civil action seeking monetary damages from Synovus Bank arising from Synovus's collection of usurious interest in connection with its advance of its money to Bank-Card holders, namely Plaintiffs and all persons similarly situated, pursuant to Synovus's administration of its Automated Overdraft Program.

787439.1

8

## Bank Cards

33.

Synovus is in the business of issuing Bank Cards to its customers and collecting interest from those customers when Synovus advances money to them to enable them to close proposed Bank-Card transactions for which such customers' then-available account balances are insufficient.

34.

Synovus manages its Bank Cards and related Automated Overdraft Program with automated information-technology systems ("Bank-Card IT Systems") that process (a) credits and debits, (b) account-balance reconciliations, (c) determinations regarding whether to grant or deny advances of Synovus's money in connection with Overdraft transactions, (d) determinations regarding whether to approve or decline Overdraft transactions, (e) the assessment and collection of interest in connection with advances of money, and (f) other related transactions.

35.

At all times relevant to this action, Synovus has maintained actual or constructive control over its Bank-Card IT Systems.

36.

Once scripted and programmed, Synovus's Bank-Card IT Systems take over, and Synovus's employees play no direct role in connection with such systems' automated execution of Overdraft transactions, including such systems' automated advance of Synovus's money to customers and subsequent, automated collection from those customers of the amount advanced along with interest.

37.

Upon opening, or shortly after opening a new account and issuing a Bank Card, Synovus establishes the Procedures pursuant to which its Bank-Card IT Systems will manage the Bank Card.  The framework of the Procedures is common to all members of the Class.

38.

The Procedures include an advance (Overdraft) limit beyond a customer's then-available account balance, up to which limit Synovus's Bank-Card IT Systems will advance Synovus's money to such customer, if such customer attempts a Bank-Card transaction beyond his or her then-available account balance.

39.

Then, with such Procedures reduced to computer scripts and Synovus's Bank-Card IT Systems programmed according to the scripts, the systems take over.  Such systems activate the Bank Card and process (a) credits and debits, (b) account-balance reconciliations, (c) determinations regarding whether to grant or deny advances of Synovus's money in connection with Overdraft transactions, (d) determinations regarding whether to approve or decline Overdraft transactions, (e) the assessment and collection of interest in connection with the advances of money, and (f) other related transactions – all with no direct human intervention or related cost.

### Synovus's Overdraft Fees Are Interest

40.

When a Synovus customer proposes a Bank-Card transaction for which he or she has insufficient money, Synovus's Bank-Card IT Systems will automatically check the customer's then-available advance (Overdraft) limit, and if the shortfall is within that limit, the systems will

787439.1

10

automatically advance the customer sufficient money to close the transaction (giving rise to an Overdraft). The system then automatically approves the transaction with the merchant or at the ATM and charges the customer a flat fee for the advance of such money (an Overdraft Fee).

41.

Synovus renders no services in connection with the foregoing automated (a) advance, (b) charge of interest and (c) subsequent collection of both the advance and all interest. The entire process, end to end, is automated; managed by Synovus's Bank-Card IT systems and based upon the Procedures established before the Overdraft transaction.

42.

Further, Synovus incurs at most *de minimis* incremental costs in connection with the foregoing automated (a) advance, (b) charge of interest, and (c) subsequent collection of both the advance and all interest. Synovus's Bank-Card IT Systems instantly execute each transaction in the litany and any incremental cost per transaction is, effectively, theoretical (*e.g.*, a fraction of a penny).

43.

When, as here, a lender (Synovus) charges and collects from a borrower (a Synovus customer) a fee (namely, an Overdraft Fee and Overdraft Collection Fee, as applicable) for the lender's advance of money and the lender renders no services other than the automatic advance of the money, the "fee" is in fact "interest."

44.

Furthermore, when, as here, a lender (Synovus) only charges and collects such fee when it makes an advance, and not when it declines to do so, the "fee" is, again, "interest." Synovus cannot justify and, indeed, does not charge any amount ("interest," "fee" or otherwise) when its

787439.1

11

Bank-Card IT Systems deny an advance of money to a customer proposing a Bank-Card transaction for which such customer's then-available account balance is insufficient; when such systems deny such an advance, the customer's Bank Card is merely declined at the merchant's register or at the ATM, and Synovus does not charge the customer anything ("interest," "fee" or otherwise) in connection with that transaction.

### Interest on Bank Card Overdraft Advances is Big Business

45.

In November 2008, the Federal Deposit Insurance Corporation ("FDIC") published a study entitled *FDIC Study of Bank Overdraft Programs* (the "FDIC's 2008 Study").

46.

The FDIC's 2008 Study surveyed 1,171 FDIC-supervised banks to, among other things, assemble and report data in connection with and in response to the rapid growth in the use of "automated overdraft programs, defined as programs in which the bank honors a customer's overdraft obligations using standardized procedures to determine whether the ... transaction qualifies for overdraft coverage." *See* Executive Summary, page II.

47.

As set forth above, when Synovus approves and issues a Bank Card, it establishes at the outset certain Procedures, the Procedures are reduced to computer scripts and Synovus's Bank-Card IT Systems are programmed according to the scripts. Then, the automated systems take over and manage the Bank Card and Synovus's Automated Overdraft Program. Synovus's Automated Overdraft Program is an "automated overdraft program" like those discussed in the FDIC's 2008 Study.

787439.1

12

48.

The FDIC's 2008 Study revealed, among other things, that: (i) the vast majority of large banks (banks presenting at least $1 billion in assets) operated automated overdraft programs, *see* Executive Summary, page II ¶ 1; (ii) the vast majority of large banks automatically enrolled customers in the bank's automated overdraft programs, *see* Executive Summary, page III ¶ 3; and (iii) the vast majority of large banks established "credit limits for automated overdraft customers in written policies, consistent with the bank's lending program," *see* Executive Summary, page III ¶ 5.

49.

Such credit limits "stipulated in such written policies ranged from $85 to $10,000, and the median credit limit was $500." Executive Summary, page III ¶ 5.

50.

Automated overdraft fees assessed by banks ranged from $10 to $38, and the median fee assessed was $27. *See* Executive Summary, page III ¶ 6.

51.

For the reporting banks, their various forms of overdraft fees represented 74% of all "service charges on deposit accounts reported by these banks," Executive Summary, page III ¶ 11, and almost half such fees "took place at POS/debit ... and ATM ... terminals." Executive Summary, page V ¶ 7.

52.

In short, the business of operating automated overdraft programs has become big business and that business has been accelerating since 2001. *See* Executive Summary, page III ¶ 2.

53.

"Accounts held by customers in low-income areas ... were more likely than accounts in higher-income areas to incur overdraft charges." Executive Summary, page V ¶ 5. Further, "[r]ecurrent overdrafts were also more likely the lower the income group." Executive Summary, page V ¶ 6.

54.

"Accounts held by young adults (ages 18 to 25) were the most likely among all age groups" to have automated overdraft transactions. *See* Executive Summary, page V ¶ 10.

55.

"Assuming a $27 overdraft fee (the survey median), a customer repaying a $20 POS/debit overdraft in two weeks would incur an APR of 3,520 percent;" and, "a customer repaying a $60 ATM overdraft in two weeks would incur an APR of 1,173 percent." *See* Executive Summary, page V ¶ 9 (emphasis added). The FDIC calculated such annual percentage rates ("APR's") as follows: "((Fee Charged/Amount Financed)*365/Term (14 days))." *See* Executive Summary, Page V fn. 8.

56.

According to the financial media, in 2009 the combined fees collected by the bank and credit union industry in connection with processing NSF checks and interest on advances of money in connection with Bank Cards, were an estimated $38 billion.

57.

Further, the customers paying most of the industry's fees for services processing NSF Checks and interest on the advance of money in connection with Bank Cards are those least able to afford it – *e.g.*, low-income households, young adults and others similarly situated.

787439.1

14

58.

The interest Synovus charges on the advance of money in connection with Bank Cards victimizes the Georgia citizens who most need the protections of Georgia's usury laws.

## Interest and Fees - from the Customer's Perspective

59.

In all or substantially all instances in which Synovus's Bank-Card IT Systems advance an Overdraft of $3,000 or less in connection with Synovus's Automated Overdraft Program and subsequently collect the advanced amount and the related Overdraft Fees and Overdraft Collection Fee, as applicable, those fees amount to usurious interest.  For example, and as set forth above, if Synovus advances $1 to a customer (giving rise to an Overdraft) and collects from that customer the advanced amount and a $36 Overdraft Fee on the sixth (6th) day following the Overdraft, then the Overdraft Fee amounts to a 219,000% APR and an 18,000% MPR. Alternatively, if Synovus collects from that customer the advanced amount, a $36 Overdraft Fee and a $35 Overdraft Collection Fee on the eighth (8th) day following the Overdraft, then the Overdraft Fee and Overdraft Collection Fee combine to amount to a 323,938% APR and a 26,625% MPR.  These rates of interest grossly exceed Georgia's civil and criminal usury limits.

60.

In this example, Synovus's customer is paying $36 to borrow $1 for six days, or alternatively, $71 to borrow $1 for eight days – in each example, a paradigmatic case of usury.

## Georgia's History Opposing Usury

61.

Georgia has opposed usury and safeguarded its citizens from the practice since 1759.

62.

Today, 251 years after enactment of Georgia's first legislation safeguarding its citizens from usury, Georgia's legislature has fixed the maximum rate of interest allowed by law and applicable here in connection with advances of money.

63.

The maximum rate of interest allowed by law is 16% APR for advances in the principal amount of $3,000 or less. O.C.G.A. § 7-4-2(a)(2).

64.

The maximum rate of interest allowed by law is 5% MPR, as an absolute ceiling, on all advances. O.C.G.A. § 7-4-18(a).

65.

While the Georgia legislature largely permits parties to establish their own rates of interest in connection with advances of money, the Georgia legislature has expressly protected Georgia consumers from two forms of usury applicable here.

66.

The Georgia legislature has expressly protected Georgia consumers in connection with relatively small advances of money, *e.g.*, in the principal amount of $3,000 or less, from rates of interest in excess of 16% APR, because, among other reasons, such borrowers are often at a material disadvantage in negotiating the terms and conditions in connection with such advances. O.C.G.A. § 7-4-2(a)(2).

67.

Further, the Georgia legislature has expressly protected Georgia consumers in connection with all advances of money from rates of interest in excess of 5% MPR. O.C.G.A. § 7-4-18(a).

787439.1

68.

Georgia courts have long looked past the labels promoted by lenders to root out the substance of a transaction to determine whether it is usurious.

## CLASS ALLEGATIONS

69.

Plaintiffs bring this action on behalf of themselves and all persons similarly situated pursuant to O.C.G.A. § 9-11-23. This action satisfies the requirements of Georgia law as a damages class action. O.C.G.A. § 9-11-23(b)(3).

70.

Plaintiffs propose to represent all persons who meet the following definition (each member referred to herein as a "Class Member" and, collectively, all such members to be referred to as the "Class Members" or the "Class"); a Class Member is a person -

a.    Who was on the date Plaintiffs filed this Complaint, and has thereafter continuously remained through the date this Court certifies this action as a class action, a citizen of Georgia; and

b.    Who maintained an account at Synovus; and

c.    To whom Synovus in the administration of its Automated Overdraft Program made an advance of money in an amount less than $3,000; and

d.    From whom Synovus collected such advance and one or more charges in connection with the advance, including, but not limited to, an Overdraft Fee and/or Overdraft Collection Fee, as applicable, within four years of the date Plaintiffs filed this Complaint.

787439.1

17

71.

Plaintiffs reserve the right to amend the foregoing class definition before this Court determines whether certification is appropriate.

72.

Excluded from the Class are (1) all Georgia state-court judges and members of their families within the first degree of consanguinity, (2) Synovus Bank's officers, directors and counsel of record, and (3) any state.

73.

Numerosity. Pursuant to O.C.G.A. § 9-11-23(a)(1), the Class is so numerous that joinder of all Class Members is impracticable. Plaintiffs are unable to allege at this time the exact number of Class Members; however, Plaintiffs believe there are at a minimum tens of thousands of Class Members. Plaintiffs believe that Synovus's records maintained in the ordinary course will readily reveal the exact number of Class Members.

74.

Commonality. Pursuant to O.C.G.A. § 9-11-23(a)(2), this action presents material questions of law and fact common to the Class. Such questions include, but are not limited to -

   a.   Civil usury –

        i.    When Synovus advanced money to Plaintiffs to fund Plaintiffs' proposed Bank-Card transactions for which Plaintiffs' then-available account balance was insufficient, was such advance an "advance" pursuant to O.C.G.A. § 7-4-2(a)(2)?

        ii.    And, if so -

           1.    When Synovus collected from Plaintiffs an Overdraft Fee in connection with such advance, was the fee "interest" pursuant to O.C.G.A. § 7-4-2(a)(3)?

2.      When Synovus collected from Plaintiffs other charges, including but not limited to, an Overdraft Collection Fee, in connection with such advance, were such other charges "interest" pursuant to O.C.G.A. § 7-4-2(a)(3)?

3.      When Synovus collected the foregoing Overdraft Fee and other charges, did Synovus know that the fees and other charges would yield an effective APR in excess of 16%?

b.      Criminal Usury -

i.      When Synovus advanced money to Plaintiffs to fund Plaintiffs' proposed Bank-Card transactions for which Plaintiffs' then-available account balance was insufficient, was such advance an "advance" pursuant to O.C.G.A. § 7-4-18(a)?

ii.      And, if so -

1.      When Synovus collected from Plaintiffs an Overdraft Fee in connection with such advance, was such fee "interest" pursuant to O.C.G.A. § 7-4-18(a)?

2.      When Synovus collected from Plaintiffs other charges, including but not limited to, an Overdraft Collection Fee, in connection with such advance, were such other charges "interest" pursuant to O.C.G.A. § 7-4-18(a)?

3.      When Synovus collected the foregoing Overdraft Fee and other charges did Synovus know that such fee and other charges would yield an effective MPR in excess of 5%?

75.

Typicality.  Pursuant to O.C.G.A. § 9-11-23(a)(3), Plaintiffs' claims are typical of the Class's claims.  All such claims -

a.      Present the same elements and burden of proof;

b.      Rely upon Synovus's same course of conduct;

c.      Rely upon the same legal arguments; and

d.      Rely upon the same method to measure damages.

76.

Adequacy.  Pursuant to O.C.G.A. § 9-11-23(a)(4), Plaintiffs and the undersigned

counsel meet the requirement of adequacy.

a.      Plaintiffs will fairly and adequately protect the interests of the Class.

b.      The undersigned counsel are qualified, experienced and able to represent

Plaintiffs and the Class.

77.

Damages Class.  Pursuant to O.C.G.A. § 9-11-23(b)(3), this action satisfies the

requirements of Georgia law for prosecution as a damages class action, because the questions of

law and fact common to the Class Members predominate over any questions affecting only

individual Class Members, and a class action is superior to other available methods for the fair

and efficient adjudication of the controversy.

78.

Predominance.  Pursuant to O.C.G.A. § 9-11-23(b)(3), the questions of law or fact

common to the Class Members predominate over any questions affecting only individual

members.  Synovus's course of conduct shall be discovered without any need for participation by

individual Class Members.  Similarly, this Court's determinations of law shall be made without

any need for participation by individual Class Members.  The Class's claims present no issues of

causation or reliance unique to individual Class Members.

79.

Superiority.  Pursuant to O.C.G.A. § 9-11-23(b)(3), a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  This action presents textbook facts and circumstances for the conduct of a class action to afford each individual Class Member a fair and efficient manner by which to prosecute his or her common claims and, likewise, a fair and efficient manner by which Synovus may defend such claims.  Class Members could number in the tens of thousands, hundreds of thousands or millions.

80.

Individual Control.  The interests of individual Class Members are overwhelmingly best served by the conduct of a class action.  Class Members' individual actual damages probably measure on the order of tens or hundreds of dollars.  By contrast, the undersigned counsel believe they will be compelled to invest millions of dollars in time, costs and expenses in the prosecution of this action in order to best prosecute (and win) the Class' claims; and, if the undersigned counsel represented only Plaintiffs (versus the entire Class), the undersigned counsel would nevertheless be compelled to expend substantially all of the same time, costs and expenses in the prosecution of this action on behalf of Plaintiffs, individually.  Therefore, in the absence of a class action, individual Class Members would, in reasonable probability, be unable to prosecute (and win) their claims.

81.

This Court will not experience any material difficulties in its administration of this action as a class action.

787439.1

21

82.

Synovus's records maintained in the ordinary course of business will readily reveal the

identity, current or last known address, driver's license number, social security number and other

identifying data for each and every Class Member.  Such records will also reveal all relevant

details in connection with the amounts of money advanced by Synovus to each Class Member in

connection with Synovus's Automated Overdraft Program and how and when Synovus collected

from the Class Member the money advanced along with Overdraft Fees and other charges,

including, but not limited to, Overdraft Collection Fees.

### COUNT I
### Violation of Georgia's Civil Usury Laws
### (On Behalf of Plaintiffs and all Class Members)

83.

Plaintiffs repeat paragraphs 1 through 82, above.

84.

Plaintiff Thomas Griner opened a personal bank account with Synovus through its

division AFB&T, and Plaintiff Griner maintains that account today.

85.

Plaintiff Fern Cohn opened a personal bank account with Synovus through its division

Columbus Bank and Trust Company, and Plaintiff Cohn maintains that account today.

86.

At the time each Plaintiff opened his or her account, Synovus offered each of them a

Bank Card, and each accepted the offer.

87.

Synovus approved and issued Bank Cards to Plaintiffs in connection with their respective accounts. In doing so, Synovus established at the outset certain Procedures in connection with Plaintiffs' Bank Cards, including, but not limited to, an advance (Overdraft) limit up to which Synovus would advance money to Plaintiffs, if they attempted a Bank-Card transaction beyond their then-available account balance.

88.

With the foregoing Procedures reduced to computer scripts and Synovus's Bank-Card IT System programmed according to those scripts, the systems took over. The systems activated Plaintiffs' Bank Cards and began automatically processing (a) credits and debits, (b) account-balance reconciliations, (c) determinations regarding whether to grant or deny advances of Synovus's money in connection with Overdraft transactions, (d) determinations regarding whether to approve or decline Overdraft transactions, (e) the assessment and collection of interest in connection with advances of money, and (f) other related transactions – all with no direct human intervention.

89.

On occasions between May 5, 2009 and April 16, 2010, including, but not limited to, September 24, 2009, November 3-4, 2009, and January 28, 2010, Synovus, in connection with its Automated Overdraft Program, advanced money to Plaintiff Griner in amounts less than $3,000 and collected Overdraft Fees from Plaintiff Griner in connection with each such advance.

90.

On each such occasion, Synovus's Overdraft Fees amounted to rates of interest in excess of Georgia's civil and criminal usury limits. For example, on September 24, 2009, Synovus

advanced Plaintiff Griner $0.85 when Plaintiff Griner made a $3.75 purchase with his Bank Card but only had available $2.90 in his account per Synovus's determination. On September 25, Synovus charged Plaintiff Griner an Overdraft Fee of $36 for that advance, and when Synovus collected same on September 25, 2010, such Overdraft Fee amounted to an APR of 1,545,882% and an MPR of 127,059%.

91.

Similarly, on July 1, 2009, Synovus, in connection with its Automated Overdraft Program, advanced money to Plaintiff Cohn in amounts less than $3,000 and collected Overdraft Fees from Plaintiff Cohn in connection with each such advance.

92.

Synovus's Overdraft Fees charged to Plaintiff Cohn also amounted to rates of interest in excess of Georgia's civil and criminal usury limits. For example, on July 1, 2009, Synovus made a series of advances to Plaintiff Cohn, including an advance of $3.41 when Plaintiff Cohn made a purchase with her Bank Card but had a negative account balance per Synovus's determination. On July 2, 2009, Synovus charged Plaintiff Cohn an Overdraft Fee of $36 for that advance, and when Synovus collected same on July 2, 2009, such Overdraft Fee amounted to an APR of 385,337% and an MPR of 31,672%.

93.

Synovus made all these advances pursuant to the foregoing Procedures compelling Synovus's Bank-Card IT Systems to automatically advance any money required by Plaintiffs to close a proposed Bank-Card transaction for which Plaintiffs' then-available account balance was insufficient, so long as such advance was within Plaintiffs' then-available advance (Overdraft)

787439.1

limit; in this way, such advance was not, and all other advances by Synovus to Plaintiffs were not, in any way inadvertent.

94.

In connection with each advance by Synovus to Plaintiffs, Synovus expected and required Plaintiffs to repay the principal amount of the advance and pay interest (the Overdraft Fee). And, Synovus collected from Plaintiffs the principal amount of the advance and interest (the Overdraft Fee) in connection with each advance.

95.

On each occasion, such interest (Overdraft Fee) amounted to an APR in excess of 16%, and Synovus knew, on each occasion, that such interest (Overdraft Fee) amounted to an APR in excess of 16%.

96.

Georgia law prohibited Synovus from collecting from Plaintiffs interest at a rate in excess of 16% APR. Therefore, when Synovus collected the foregoing interest (Overdraft Fees), Synovus violated Georgia civil usury laws, and Synovus is required to forfeit and refund to Plaintiffs all of the interest (Overdraft Fees) Synovus has collected from Plaintiffs. O.C.G.A. § 7-4-10.

97.

In a pattern substantially identical to the foregoing facts in connection with Plaintiffs, Synovus advanced money to each Class Member, assessed and collected usurious interest from each Class Member and Synovus is required by Georgia law to likewise forfeit and refund to each Class Member all of the interest that Synovus has collected from each Class Member.

787439.1

25

## COUNT II
### Violation of Georgia's Criminal Usury Laws
### (On Behalf of Plaintiffs and all Class Members)

98.

Plaintiffs repeat paragraphs 1 through 97, above.

99.

As more fully set forth above and in connection with each advance by Synovus to Plaintiffs, Synovus expected and required Plaintiffs to repay the principal amount of the advance and pay interest (an Overdraft Fee). And, Synovus collected from Plaintiffs the principal amount of the advance and interest (an Overdraft Fee) in connection with each advance.

100.

On each occasion, such interest (Overdraft Fee) amounted to an MPR in excess of 5%. Indeed, in the case of Plaintiff Griner on one occasion such interest amounted to an MPR of 127,059%. And on one occasion in the case of Plaintiff Cohn, the interest amounted to an MPR of 31,672%. Synovus knew, on each occasion, that such interest amounted to an MPR in excess of 5%.

101.

Georgia law prohibited Synovus from collecting from Plaintiffs interest at a rate in excess of 5% MPR. Therefore, when Synovus collected the foregoing interest, Synovus violated Georgia criminal usury laws, and Synovus is required to forfeit and refund to Plaintiffs all of the interest (Overdraft Fees) that Synovus has collected from Plaintiffs.

102.

In a pattern substantially identical to the foregoing facts in connection with Plaintiffs, Synovus advanced Synovus's money to each Class Member, assessed and collected usurious

787439.1

26

interest from each Class Member and Synovus is required by Georgia law to likewise forfeit and refund to each Class Member all of the interest (Overdraft Fees) that Synovus has collected from each Class Member.

## COUNT III
### Conversion
**(On Behalf of Plaintiffs and all Class Members)**

103.

Plaintiffs repeat paragraphs 1 through 102, above.

104.

Plaintiffs owned personal property in the form of money on deposit at Synovus.

105.

Through the foregoing unlawful conduct, Synovus committed an unauthorized assumption and exercise of right of ownership over Plaintiffs' personal property (to-wit, Plaintiffs' money on deposit with Synovus) and unlawfully appropriated it. Synovus also substantially and wrongfully interfered with Plaintiffs' right to possession of their personal property. Synovus converted Plaintiffs' personal property for Synovus's use.

106.

Such unlawful taking of Plaintiffs' personal property by Synovus illegally deprived Plaintiffs of the use of their personal property.

107.

Synovus's unlawful conversion of Plaintiffs' personal property proximately caused Plaintiffs injury, including, but not limited to, interference with their ordinary and intended use of their personal property.

787439.1

27

108.

In a pattern substantially identical to the foregoing facts in connection with Plaintiffs, Synovus unlawfully appropriated, and substantially and wrongfully interfered with, the personal property and property rights of each Class Member and Synovus's conversion of each Class Member's personal property proximately caused such Class Member injury, including, but not limited to, interference with his or her ordinary and intended use of his or her personal property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all Class Members whom they seek to represent, pray for the following relief -

1.    Trial by jury on all issues so triable;

2.    Judgment entered in favor of Plaintiffs and all Class Members and against Synovus in the amount to be determined by the jury at trial;

3.    Forfeiture and refund of all interest (Overdraft Fees and Overdraft Collection Fees) assessed and collected by Synovus in connection with Synovus's advance of its money to Plaintiffs and the Class Members in connection with Synovus's Automated Overdraft Program, which interest violated O.C.G.A. §§ 7-4-2(a)(2) and/or 7-4-18(a);

4.    Actual damages;

5.    Pre-judgment interest at the maximum rate permitted by applicable law; and

6.    Such other relief as this Court deems just and proper.

DATED this the 30th day of July, 2010.

Respectfully submitted,

Michael B. Terry *[By GDJ w/ express permission]*
Georgia Bar No. 702582
Steven J. Rosenwasser
Georgia Bar No. 614908
Jason J. Carter
Georgia Bar No. 141669
Mary W. Pyrdum
Georgia Bar No. 940420

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 W. Peachtree Street
Atlanta, Georgia 30309
Telephone:    404-881-4100
Facsimile:    404-881-4111
terry@bmelaw.com
rosenwasser@bmelaw.com
carter@bmelaw.com
pyrdum@bmelaw.com

Gerald Davidson, Jr.
Georgia Bar No. 206600

MAHAFFEY PICKENS TUCKER, LLP
1550 North Brown Road
Suite 125
Lawrenceville, GA 30043
Telephone:    770-232-0000
Facsimile:    678-518-6880
gdavidson@mptlawfirm.com

C. Ronald Ellington
Georgia Bar No. 243800

C. RONALD ELLINGTON, ATTORNEY, PC
135 Beaver Trail
Athens, Georgia 30605
Telephone:    706-543-4684
rellington9@charter.net

787439.1

29

J. Benjamin Finley
Georgia Bar No. 261504
MaryBeth V. Gibson
Georgia Bar No. 725843
M. Kathryn Rogers
Georgia Bar No. 482629

THE FINLEY FIRM, P.C.
2931 North Druid Hills Road
Suite A
Atlanta, Georgia 30329
Telephone:    404-320-9979
Facsimile:    404-320-9978
bfinley@thefinleyfirm.com
mgibson@thefinleyfirm.com
krogers@thefinleyfirm.com

*Attorneys for Plaintiffs*

787439.1

# Amended Complaint

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

THOMAS GRINER and FERN COHN,    )
on behalf of themselves and all persons    )
similarly situated,    )
   )
      Plaintiffs,    )
   )
v.    )
   )
SYNOVUS BANK, d/b/a    )      CIVIL ACTION
Bank of North Georgia, Columbus Bank    )
and Trust Company, AFB&T, Sea Island    )      FILE NO. 10C-11235-3
Bank, SB&T Bank, CB&T Bank of    )
Middle Georgia, The Coastal Bank of    )
Georgia, First State Bank and Trust    )
Company of Valdosta, Commercial Bank,    )
Georgia Bank & Trust, Bank of Coweta,    )
First Community Bank of Tifton, Citizens    )
First Bank, Commercial Bank & Trust    )
Company of Troup County, and Cohutta    )
Banking Company,    )
   )
      Defendant.    )

## FIRST AMENDED COMPLAINT

Plaintiffs Thomas Griner and Fern Cohn, on behalf of themselves and all persons

similarly situated, file this First Amended Complaint against Defendant Synovus Bank

("Synovus"). Plaintiffs respectfully show the Court as follows:

## NATURE OF THE ACTION

1.

This is an action to recover damages incurred as a result of Synovus's unlawful conduct

in collecting from Synovus Bank customers interest far in excess of the limits permitted for such

transactions by Georgia law.

796693.1

2.

Synovus's unlawful conduct occurs in the administration of its automated overdraft programs ("Automated Overdraft Programs") in connection with its "POS/debit" and automated-teller machine ("ATM") cards (each a "Bank Card" and collectively "Bank Cards"), which Bank Cards Synovus customers use to access money in their Synovus accounts.

3.

In a typical transaction in connection with Synovus's Automated Overdraft Program, a Synovus customer attempts to use his or her Bank Card to make a purchase (or withdraw cash) in an amount for which such customer's then-available account balance is insufficient.

4.

The amount by which such customer's then-available account balance is insufficient may be very small. For example, a customer may attempt to use his or her Bank Card to purchase a cup of coffee, and his or her then-available account balance may be insufficient by as little as $1 or even $.01.

5.

According to Synovus's written, standardized policies and procedures (Synovus's "Procedures"), rather than notifying the customer that he or she has insufficient money to cover the transaction and declining the transaction, Synovus will (a) automatically advance to the customer the amount of money needed to close the transaction (in the example above, the $1 or $.01 to purchase the coffee) and (b) approve the transaction. This gives rise to an overdraft in the customer's account (an "Overdraft").

6.

Synovus then automatically charges the customer an "overdraft fee" in an amount up to
$36 (an "Overdraft Fee").

7.

Synovus only charges an Overdraft Fee if it advances its money to the customer to close
the proposed transaction. Thus, in the example above, if the customer has sufficient money to
cover the coffee purchase, Synovus does not charge the customer an Overdraft Fee. Similarly, if
the customer has insufficient money to cover the coffee purchase and Synovus declines the
transaction, it does not charge the customer an Overdraft Fee. But, if the customer is short by
$.01 and Synovus advances the $.01, then Synovus charges the customer an Overdraft Fee.

8.

Overdraft transactions between Synovus and its customers are entirely automated.
Indeed, from advancing to collecting the Overdraft, Overdraft Fee and other related charges,
Synovus relies upon automated information-technology systems to execute each transaction, and
such systems were in place well before the Overdraft took place. As a result, and as described
below, Synovus renders no services in connection with its execution of an Overdraft transaction.
Yet, Synovus charges customers up to a $36 Overdraft Fee and other related charges per
Overdraft.

9.

When, as here, a lender charges a borrower a fee for the use of money advanced, and the
lender renders no services in connection with that fee, the "fee" is, in fact, "interest" charged by
the lender for the use of the money advanced.

796693.1

3

10.

In the context of its Automated Overdraft Program, Synovus's Overdraft Fee is interest collected from its customer for Synovus's advance of money to close a proposed Bank-Card transaction for which such customer's then-available account balance was insufficient.

11.

Further, if a customer's account remains in overdraft for seven consecutive calendar days, then on the eighth (8th) calendar day Synovus charges such customer additional interest in the form of an overdraft collection fee in the amount of up to $35 ("Overdraft Collection Fee"). Synovus charges this additional fee even though it renders no services in connection with the fee.

12.

In the foregoing example, if the Overdraft is in the amount of $1, and the Overdraft ($1) and Overdraft Fee ($36) are paid on the sixth (6th) day after the Overdraft transaction, thereby avoiding the Overdraft Collection Fee, then the Overdraft Fee amounts to a 219,000% annual percentage rate ("APR") and an 18,000% monthly percentage rate ("MPR"). Further, if the Overdraft is in the amount of $.01, and the Overdraft ($.01) and Overdraft Fee ($36) are paid on the sixth (6th) day after the Overdraft transaction, thereby avoiding the Overdraft Collection Fee, then the Overdraft Fee amounts to a 21,900,000% APR and a 1,800,000% MPR.

13.

Alternatively, in the foregoing example, if the Overdraft is in the amount of $1, and the Overdraft ($1), Overdraft Fee ($36) and Overdraft Collection Fee ($35) arc paid on the eighth (8th) day after the Overdraft transaction, then the Overdraft Fee and Overdraft Collection Fee combine to amount to a 323,938% APR and a 26,625% MPR. Further, if the Overdraft is in the amount of $.01, and the Overdraft ($.01), Overdraft Fee ($36) and Overdraft Collection Fee

($35) are paid on the eighth (8th) day after the Overdraft transaction, then the Overdraft Fee and Overdraft Collection Fee combine to amount to a 32,393,800% APR and a 2,662,500% MPR.

14.

Such rates grossly exceed Georgia's civil and criminal usury limits.

15.

Further, while any portion of a customer's Overdraft, Overdraft Fee or Overdraft Collection Fee remains outstanding and unpaid, and on each occasion that the customer deposits new money in his or her account, Synovus automatically seizes such new money to the extent required to collect the full outstanding and unpaid amount of the Overdraft, Overdraft Fee, and Overdraft Collection Fee.

16.

For the reasons set forth in this Complaint, Plaintiffs and all other persons similarly situated are entitled to damages for the injuries they have suffered as a result of Synovus's unlawful conduct. And, Plaintiffs hereby bring this action on behalf of themselves and all others similarly situated for: (1) violation of Georgia's civil usury laws, O.C.G.A. § 7-4-2; (2) violation of Georgia's criminal usury laws, O.C.G.A. § 7-4-18; (3) conversion; and (4) money had and received.

**DEMAND FOR PAYMENT**

17.

Plaintiffs, on behalf of themselves and all Class Members, as defined below, demanded via paragraph 17 of the original Complaint, filed on July 30, 2010, and served on Synovus on August 3, 2010, that Synovus refund and repay to each Class Member all of the Overdraft Fees and Overdraft Collection Fees, (a) collected by Synovus from each such Class Member (i) in

connection with Synovus's administration of its Automated Overdraft Program and (ii) within

four years of the date Plaintiffs filed the original Complaint and (b) which Overdraft Fees and

other charges combine to amount to an APR in excess of 16% and/or an MPR in excess of 5% on

the related advance.

18.

Plaintiffs also, on behalf of themselves and all Class Members, as defined below,

demanded via letter sent to Synovus on August 3, 2010 that Synovus return all of the fees that

Synovus collected from Plaintiffs and the Class in connection with an advance of money made

pursuant to Synovus's Automated Overdraft Program, as defined in the original Complaint,

which fees (1) were collected within four years of July 30, 2010, and (2), when compared to the

corresponding advance for which such fees were charged and taking into account the number of

days such advance and fees were outstanding and unpaid, amounted to (i) an annual percentage

rate exceeding 16% or (ii) a monthly percentage rate exceeding 5%. Plaintiffs demanded that

Synovus return these fees by August 26, 2010, because the fees were money collected from

Plaintiffs and the Class Members for which Synovus was not the true owner and which in equity

and good conscience Synovus may not keep.

19.

Synovus did not respond to Plaintiffs' demand. Synovus failed to return the money that it

collected from Plaintiffs and the Class Members by August 26, 2010, as demanded by Plaintiffs

on behalf of themselves and the Class Members.

## PARTIES

20.

Plaintiff Thomas Griner is a natural person and a citizen of Georgia, residing in Clarke County, Georgia.

21.

Plaintiff Fern Cohn is a natural person and a citizen of Georgia, residing in Muscogee County, Georgia.

22.

Synovus is a Georgia corporation chartered by Georgia to operate as a Georgia state bank.

23.

Synovus may be served with process through its registered agent, Corporation Service Company, at 40 Technology Parkway South, #300, Norcross, Georgia 30092.

24.

Synovus does business in Georgia through its various bank divisions, including Bank of North Georgia, Columbus Bank and Trust Company, AFB&T, Sea Island Bank, SB&T Bank, CB&T Bank of Middle Georgia, The Coastal Bank of Georgia, First State Bank and Trust Company of Valdosta, Commercial Bank, Georgia Bank & Trust, Bank of Coweta, First Community Bank of Tifton, Citizens First Bank, Commercial Bank & Trust Company of Troup County, and Cohutta Banking Company.  These divisions are trade names of Synovus itself.

## JURISDICTION

### 25.

This Court has original jurisdiction of this action because Synovus (a) was formed under the laws of Georgia and chartered to operate as a state bank in Georgia, (b) maintains its principal place of business in Georgia, (c) is registered to do business in Georgia, (d) is doing business in Georgia, (e) committed the unlawful acts in Georgia, and (f) caused the resulting injury in Georgia.  Synovus is subject to the personal and general jurisdiction of this Court.

### 26.

This action presents no federal subject-matter jurisdiction, because Plaintiffs assert no claim under federal law and expressly disavow any claim under federal law.

### 27.

The Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d, is inapplicable to Plaintiffs' claims or otherwise to this action, because, among other reasons, the interest rate Synovus was permitted to charge under applicable state law was, at all times relevant to this action, more than one per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where Synovus is located; and therefore the FDIA is inapplicable to Plaintiffs' claims and presents no federal question or right of removal.

### 28.

The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), is inapplicable to Plaintiffs' claims or otherwise to this action because neither Plaintiffs nor any of the Class Members, as defined below, is a citizen of a state different from Synovus and Plaintiffs, the Class Members, as defined below, and Synovus are all citizens of Georgia.

29.

This action presents no federal diversity jurisdiction because Plaintiffs, the Class

Members, as defined below, and Synovus are all citizens of Georgia.

30.

Synovus is also prohibited from removing this action to federal court, because Synovus is

a citizen of Georgia. 28 U.S.C. § 1441(b).

## VENUE

31.

Venue is proper in Gwinnett County, Georgia, pursuant to O.C.G.A. § 14-2-510(b)(1)

because Synovus's registered agent and registered office is in Gwinnett County, Georgia.

32.

Synovus is a domestic corporation authorized to do business in Gwinnett County,

Georgia.

33.

At all times relevant to this action, Synovus has been doing business in Gwinnett County,

Georgia.

## COMMON FACTUAL ALLEGATIONS

34.

This is a civil action seeking monetary damages from Synovus Bank arising from

Synovus's collection of usurious interest in connection with its advance of its money to Bank-

Card holders, namely Plaintiffs and all persons similarly situated, pursuant to Synovus's

administration of its Automated Overdraft Program.

## Bank Cards

### 35.

Synovus is in the business of issuing Bank Cards to its customers and collecting interest from those customers when Synovus advances money to them to enable them to close proposed Bank-Card transactions for which such customers' then-available account balances are insufficient.

### 36.

Synovus manages its Bank Cards and related Automated Overdraft Program with automated information-technology systems ("Bank-Card IT Systems") that process (a) credits and debits, (b) account-balance reconciliations, (c) determinations regarding whether to grant or deny advances of Synovus's money in connection with Overdraft transactions, (d) determinations regarding whether to approve or decline Overdraft transactions, (e) the assessment and collection of interest in connection with advances of money, and (f) other related transactions.

### 37.

At all times relevant to this action, Synovus has maintained actual or constructive control over its Bank-Card IT Systems.

### 38.

Once scripted and programmed, Synovus's Bank-Card IT Systems take over, and Synovus's employees play no direct role in connection with such systems' automated execution of Overdraft transactions, including such systems' automated advance of Synovus's money to customers and subsequent, automated collection from those customers of the amount advanced along with interest.

796693.1

39.

Upon opening, or shortly after opening a new account and issuing a Bank Card, Synovus establishes the Procedures pursuant to which its Bank-Card IT Systems will manage the Bank Card. The framework of the Procedures is common to all members of the Class.

40.

The Procedures include an advance (Overdraft) limit beyond a customer's then-available account balance, up to which limit Synovus's Bank-Card IT Systems will advance Synovus's money to such customer, if such customer attempts a Bank-Card transaction beyond his or her then-available account balance.

41.

Then, with such Procedures reduced to computer scripts and Synovus's Bank-Card IT Systems programmed according to the scripts, the systems take over. Such systems activate the Bank Card and process (a) credits and debits, (b) account-balance reconciliations, (c) determinations regarding whether to grant or deny advances of Synovus's money in connection with Overdraft transactions, (d) determinations regarding whether to approve or decline Overdraft transactions, (e) the assessment and collection of interest in connection with the advances of money, and (f) other related transactions – all with no direct human intervention or related cost.

### Synovus's Overdraft Fees Are Interest

42.

When a Synovus customer proposes a Bank-Card transaction for which he or she has insufficient money, Synovus's Bank-Card IT Systems will automatically check the customer's then-available advance (Overdraft) limit, and if the shortfall is within that limit, the systems will

automatically advance the customer sufficient money to close the transaction (giving rise to an Overdraft).  The system then automatically approves the transaction with the merchant or at the ATM and charges the customer a flat fee for the advance of such money (an Overdraft Fee).

### 43.

Synovus renders no services in connection with the foregoing automated (a) advance, (b) charge of interest and (c) subsequent collection of both the advance and all interest.  The entire process, end to end, is automated; managed by Synovus's Bank-Card IT systems and based upon the Procedures established before the Overdraft transaction.

### 44.

Further, Synovus incurs at most *de minimis* incremental costs in connection with the foregoing automated (a) advance, (b) charge of interest, and (c) subsequent collection of both the advance and all interest.  Synovus's Bank-Card IT Systems instantly execute each transaction in the litany and any incremental cost per transaction is, effectively, theoretical (*e.g.*, a fraction of a penny).

### 45.

When, as here, a lender (Synovus) charges and collects from a borrower (a Synovus customer) a fee (namely, an Overdraft Fee and Overdraft Collection Fee, as applicable) for the lender's advance of money and the lender renders no services other than the advance of the money, that "fee" is in fact "interest."

### 46.

Furthermore, when, as here, a lender (Synovus) only charges and collects such fee when it makes an advance, and not when it declines to do so, the "fee" is, again, "interest."  Synovus cannot justify and, indeed, does not charge any amount ("interest," "fee" or otherwise) when its

796693.1

12

Bank-Card IT Systems deny an advance of money to a customer proposing a Bank-Card transaction for which such customer's then-available account balance is insufficient; when such systems deny such an advance, the customer's Bank Card is merely declined at the merchant's register or at the ATM, and Synovus does not charge the customer anything ("interest," "fee" or otherwise) in connection with that transaction.

### Interest on Bank Card Overdraft Advances is Big Business

47.

In November 2008, the Federal Deposit Insurance Corporation ("FDIC") published a study entitled *FDIC Study of Bank Overdraft Programs* (the "FDIC's 2008 Study").

48.

The FDIC's 2008 Study surveyed 1,171 FDIC-supervised banks to, among other things, assemble and report data in connection with and in response to the rapid growth in the use of "automated overdraft programs, defined as programs in which the bank honors a customer's overdraft obligations using standardized procedures to determine whether the ... transaction qualifies for overdraft coverage." *See* Executive Summary, page II.

49.

As set forth above, when Synovus approves and issues a Bank Card, it establishes at the outset certain Procedures, the Procedures are reduced to computer scripts and Synovus's Bank-Card IT Systems are programmed according to the scripts. Then, the automated systems take over and manage the Bank Card and Synovus's Automated Overdraft Program. Synovus's Automated Overdraft Program is an "automated overdraft program" like those discussed in the FDIC's 2008 Study.

50.

The FDIC's 2008 Study revealed, among other things, that:  (i) the vast majority of large banks (banks presenting at least $1 billion in assets) operated automated overdraft programs, *see* Executive Summary, page II ¶ 1; (ii) the vast majority of large banks automatically enrolled customers in the bank's automated overdraft programs, *see* Executive Summary, page III ¶ 3; and (iii) the vast majority of large banks established "credit limits for automated overdraft customers in written policies, consistent with the bank's lending program," *see* Executive Summary, page III ¶ 5.

51.

Such credit limits "stipulated in such written policies ranged from $85 to $10,000, and the median credit limit was $500." Executive Summary, page III ¶ 5.

52.

Automated overdraft fees assessed by banks ranged from $10 to $38, and the median fee assessed was $27.  *See* Executive Summary, page III ¶ 6.

53.

For the reporting banks, their various forms of overdraft fees represented 74% of all "service charges on deposit accounts reported by these banks," Executive Summary, page III ¶ 11, and almost half such fees "took place at POS/debit ... and ATM ... terminals." Executive Summary, page V ¶ 7.

54.

In short, the business of operating automated overdraft programs has become big business and that business has been accelerating since 2001.  *See* Executive Summary, page III ¶ 2.

55.

"Accounts held by customers in low-income areas ... were more likely than accounts in higher-income areas to incur overdraft charges." Executive Summary, page V ¶ 5. Further, "[r]ecurrent overdrafts were also more likely the lower the income group." Executive Summary, page V ¶ 6.

56.

"Accounts held by young adults (ages 18 to 25) were the most likely among all age groups" to have automated overdraft transactions. *See* Executive Summary, page V ¶ 10.

57.

"Assuming a $27 overdraft fee (the survey median), a customer repaying a $20 POS/debit overdraft in two weeks would incur an APR of 3,520 percent;" and, "a customer repaying a $60 ATM overdraft in two weeks would incur an APR of 1,173 percent." *See* Executive Summary, page V ¶ 9 (emphasis added). The FDIC calculated such annual percentage rates ("APR's") as follows: "((Fee Charged/Amount Financed)*365/Term (14 days))." *See* Executive Summary, Page V fn. 8.

58.

According to the financial media, in 2009 the combined fees collected by the bank and credit union industry in connection with processing NSF checks and interest on advances of money in connection with Bank Cards, were an estimated $38 billion.

59.

Further, the customers paying most of the industry's fees for services processing NSF Checks and interest on the advance of money in connection with Bank Cards are those least able to afford it – *e.g.*, low-income households, young adults and others similarly situated.

60.

The interest Synovus charges on the advance of money in connection with Bank Cards victimizes the Georgia citizens who most need the protections of Georgia's usury laws.

## Interest and Fees - from the Customer's Perspective

61.

In all or substantially all instances in which Synovus's Bank-Card IT Systems advance an Overdraft of $3,000 or less in connection with Synovus's Automated Overdraft Program and subsequently collect the advanced amount and the related Overdraft Fees and Overdraft Collection Fee, as applicable, those fees amount to usurious interest.  For example, and as set forth above, if Synovus advances $1 to a customer (giving rise to an Overdraft) and collects from that customer the advanced amount and a $36 Overdraft Fee on the sixth (6th) day following the Overdraft, then the Overdraft Fee amounts to a 219,000% APR and an 18,000% MPR. Alternatively, if Synovus collects from that customer the advanced amount, a $36 Overdraft Fee and a $35 Overdraft Collection Fee on the eighth (8th) day following the Overdraft, then the Overdraft Fee and Overdraft Collection Fee combine to amount to a 323,938% APR and a 26,625% MPR.  These rates of interest grossly exceed Georgia's civil and criminal usury limits.

62.

In this example, Synovus's customer is paying $36 to borrow $1 for six days, or alternatively, $71 to borrow $1 for eight days – in each example, a paradigmatic case of usury.

## Georgia's History Opposing Usury

63.

Georgia has opposed usury and safeguarded its citizens from the practice since 1759.

64.

Today, 251 years after enactment of Georgia's first legislation safeguarding its citizens from usury, Georgia's legislature has fixed the maximum rate of interest allowed by law and applicable here in connection with advances of money.

65.

The maximum rate of interest allowed by law is 16% APR for advances in the principal amount of $3,000 or less.  O.C.G.A. § 7-4-2(a)(2).

66.

The maximum rate of interest allowed by law is 5% MPR, as an absolute ceiling, on all advances.  O.C.G.A. § 7-4-18(a).

67.

While the Georgia legislature largely permits parties to establish their own rates of interest in connection with advances of money, the Georgia legislature has expressly protected Georgia consumers from two forms of usury applicable here.

68.

The Georgia legislature has expressly protected Georgia consumers in connection with relatively small advances of money, *e.g.*, in the principal amount of $3,000 or less, from rates of interest in excess of 16% APR, because, among other reasons, such borrowers are often at a material disadvantage in negotiating the terms and conditions in connection with such advances. O.C.G.A. § 7-4-2(a)(2).

69.

Further, the Georgia legislature has expressly protected Georgia consumers in connection with all advances of money from rates of interest in excess of 5% MPR.  O.C.G.A. § 7-4-18(a).

796693.1

70.

Georgia courts have long looked past the labels promoted by lenders to root out the substance of a transaction to determine whether it is usurious.

## CLASS ALLEGATIONS

71.

Plaintiffs bring this action on behalf of themselves and all persons similarly situated pursuant to O.C.G.A. § 9-11-23.  This action satisfies the requirements of Georgia law as a damages class action.  O.C.G.A. § 9-11-23(b)(3).

72.

Plaintiffs propose to represent all persons who meet the following definition (each member referred to herein as a "Class Member" and, collectively, all such members to be referred to as the "Class Members" or the "Class"); a Class Member is a person -

a.      Who was on the date Plaintiffs filed this Complaint, and has thereafter continuously remained through the date this Court certifies this action as a class action, a citizen of Georgia; and

b.      Who maintained an account at Synovus; and

c.      To whom Synovus in the administration of its Automated Overdraft Program made an advance of money in an amount less than $3,000; and

d.      From whom Synovus collected such advance and one or more charges in connection with the advance, including, but not limited to, an Overdraft Fee and/or Overdraft Collection Fee, as applicable, within four years of the date Plaintiffs filed this Complaint.

73.

Plaintiffs reserve the right to amend the foregoing class definition before this Court determines whether certification is appropriate.

74.

Excluded from the Class are (1) all Georgia state-court judges and members of their families within the first degree of consanguinity, (2) Synovus Bank's officers, directors and counsel of record, and (3) any state.

75.

Numerosity. Pursuant to O.C.G.A. § 9-11-23(a)(1), the Class is so numerous that joinder of all Class Members is impracticable. Plaintiffs are unable to allege at this time the exact number of Class Members; however, Plaintiffs believe there are at a minimum tens of thousands of Class Members. Plaintiffs believe that Synovus's records maintained in the ordinary course will readily reveal the exact number of Class Members.

76.

Commonality. Pursuant to O.C.G.A. § 9-11-23(a)(2), this action presents material questions of law and fact common to the Class. Such questions include, but are not limited to -

a.      Civil usury –

        i.      When Synovus advanced money to Plaintiffs to fund Plaintiffs' proposed Bank-Card transactions for which Plaintiffs' then-available account balance was insufficient, was such advance an "advance" pursuant to O.C.G.A. § 7-4-2(a)(2)?

        ii.     And, if so -

                1.      When Synovus collected from Plaintiffs an Overdraft Fee in connection with such advance, was the fee "interest" pursuant to O.C.G.A. § 7-4-2(a)(3)?

2.      When Synovus collected from Plaintiffs other charges, including but not limited to, an Overdraft Collection Fee, in connection with such advance, were such other charges "interest" pursuant to O.C.G.A. § 7-4-2(a)(3)?

3.      When Synovus collected the foregoing Overdraft Fee and other charges, did Synovus know that the fees and other charges would yield an effective APR in excess of 16%?

b.      Criminal Usury -

i.      When Synovus advanced money to Plaintiffs to fund Plaintiffs' proposed Bank-Card transactions for which Plaintiffs' then-available account balance was insufficient, was such advance an "advance" pursuant to O.C.G.A. § 7-4-18(a)?

ii.      And, if so -

1.      When Synovus collected from Plaintiffs an Overdraft Fee in connection with such advance, was such fee "interest" pursuant to O.C.G.A. § 7-4-18(a)?

2.      When Synovus collected from Plaintiffs other charges, including but not limited to, an Overdraft Collection Fee, in connection with such advance, were such other charges "interest" pursuant to O.C.G.A. § 7-4-18(a)?

3.      When Synovus collected the foregoing Overdraft Fee and other charges did Synovus know that such fee and other charges would yield an effective MPR in excess of 5%?

77.

Typicality.  Pursuant to O.C.G.A. § 9-11-23(a)(3), Plaintiffs' claims are typical of the Class's claims.  All such claims -

a.      Present the same elements and burden of proof;

796693.1

b.      Rely upon Synovus's same course of conduct;

c.      Rely upon the same legal arguments; and

d.      Rely upon the same method to measure damages.

78.

Adequacy.  Pursuant to O.C.G.A. § 9-11-23(a)(4), Plaintiffs and the undersigned counsel meet the requirement of adequacy.

a.      Plaintiffs will fairly and adequately protect the interests of the Class.

b.      The undersigned counsel are qualified, experienced and able to represent Plaintiffs and the Class.

79.

Damages Class.  Pursuant to O.C.G.A. § 9-11-23(b)(3), this action satisfies the requirements of Georgia law for prosecution as a damages class action, because the questions of law and fact common to the Class Members predominate over any questions affecting only individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

80.

Predominance.  Pursuant to O.C.G.A. § 9-11-23(b)(3), the questions of law or fact common to the Class Members predominate over any questions affecting only individual members.  Synovus's course of conduct shall be discovered without any need for participation by individual Class Members.  Similarly, this Court's determinations of law shall be made without any need for participation by individual Class Members.  The Class's claims present no issues of causation or reliance unique to individual Class Members.

81.

Superiority. Pursuant to O.C.G.A. § 9-11-23(b)(3), a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. This action presents textbook facts and circumstances for the conduct of a class action to afford each individual Class Member a fair and efficient manner by which to prosecute his or her common claims and, likewise, a fair and efficient manner by which Synovus may defend such claims. Class Members could number in the tens of thousands, hundreds of thousands or millions.

82.

Individual Control. The interests of individual Class Members are overwhelmingly best served by the conduct of a class action. Class Members' individual actual damages probably measure on the order of tens or hundreds of dollars. By contrast, the undersigned counsel believe they will be compelled to invest millions of dollars in time, costs and expenses in the prosecution of this action in order to best prosecute (and win) the Class' claims; and, if the undersigned counsel represented only Plaintiffs (versus the entire Class), the undersigned counsel would nevertheless be compelled to expend substantially all of the same time, costs and expenses in the prosecution of this action on behalf of Plaintiffs, individually. Therefore, in the absence of a class action, individual Class Members would, in reasonable probability, be unable to prosecute (and win) their claims.

83.

This Court will not experience any material difficulties in its administration of this action as a class action.

84.

Synovus's records maintained in the ordinary course of business will readily reveal the identity, current or last known address, driver's license number, social security number and other identifying data for each and every Class Member.  Such records will also reveal all relevant details in connection with the amounts of money advanced by Synovus to each Class Member in connection with Synovus's Automated Overdraft Program and how and when Synovus collected from the Class Member the money advanced along with Overdraft Fees and other charges, including, but not limited to, Overdraft Collection Fees.

## COUNT I
### Violation of Georgia's Civil Usury Laws
### (On Behalf of Plaintiffs and all Class Members)

85.

Plaintiffs repeat paragraphs 1 through 84, above.

86.

Plaintiff Thomas Griner opened a personal bank account with Synovus through its division AFB&T, and Plaintiff Griner maintains that account today.

87.

Plaintiff Fern Cohn opened a personal bank account with Synovus through its division Columbus Bank and Trust Company, and Plaintiff Cohn maintains that account today.

88.

At the time each Plaintiff opened his or her account, Synovus offered each of them a Bank Card, and each accepted the offer.

89.

Synovus approved and issued Bank Cards to Plaintiffs in connection with their respective accounts. In doing so, Synovus established at the outset certain Procedures in connection with Plaintiffs' Bank Cards, including, but not limited to, an advance (Overdraft) limit up to which Synovus would advance money to Plaintiffs, if they attempted a Bank-Card transaction beyond their then-available account balance.

90.

With the foregoing Procedures reduced to computer scripts and Synovus's Bank-Card IT System programmed according to those scripts, the systems took over. The systems activated Plaintiffs' Bank Cards and began processing (a) credits and debits, (b) account-balance reconciliations, (c) determinations regarding whether to grant or deny advances of Synovus's money in connection with Overdraft transactions, (d) determinations regarding whether to approve or decline Overdraft transactions, (e) the assessment and collection of interest in connection with advances of money, and (f) other related transactions – all with no direct human intervention.

91.

On occasions between May 5, 2009 and April 16, 2010, including, but not limited to, September 24, 2009, November 3-4, 2009, and January 28, 2010, Synovus, in connection with its Automated Overdraft Program, advanced money to Plaintiff Griner in amounts less than $3,000 and collected Overdraft Fees from Plaintiff Griner in connection with each such advance.

92.

On each such occasion, Synovus's Overdraft Fees amounted to rates of interest in excess of Georgia's civil and criminal usury limits. For example, on September 24, 2009, Synovus

796693.1

advanced Plaintiff Griner $0.85 when Plaintiff Griner made a $3.75 purchase with his Bank Card but only had available $2.90 in his account per Synovus's determination.  On September 25, Synovus charged Plaintiff Griner an Overdraft Fee of $36 for that advance, and when Synovus collected same on September 25, 2010, such Overdraft Fee amounted to an APR of 1,545,882% and an MPR of 127,059%.

93.

Similarly, on July 1, 2009, Synovus, in connection with its Automated Overdraft Program, advanced money to Plaintiff Cohn in amounts less than $3,000 and collected Overdraft Fees from Plaintiff Cohn in connection with each such advance.

94.

Synovus's Overdraft Fees charged to Plaintiff Cohn also amounted to rates of interest in excess of Georgia's civil and criminal usury limits.  For example, on July 1, 2009, Synovus made a series of advances to Plaintiff Cohn, including an advance of $3.41 when Plaintiff Cohn made a purchase with her Bank Card but had a negative account balance per Synovus's determination. On July 2, 2009, Synovus charged Plaintiff Cohn an Overdraft Fee of $36 for that advance, and when Synovus collected same on July 2, 2009, such Overdraft Fee amounted to an APR of 385,337% and an MPR of 31,672%.

95.

Synovus made all these advances pursuant to the foregoing Procedures compelling Synovus's Bank-Card IT Systems to automatically advance any money required by Plaintiffs to close a proposed Bank-Card transaction for which Plaintiffs' then-available account balance was insufficient, so long as such advance was within Plaintiffs' then-available advance (Overdraft)

limit; in this way, such advance was not, and all other advances by Synovus to Plaintiffs were not, in any way inadvertent.

96.

In connection with each advance by Synovus to Plaintiffs, Synovus expected and required Plaintiffs to repay the principal amount of the advance and pay interest (an Overdraft Fee). And, Synovus collected from Plaintiffs the principal amount of the advance and interest (an Overdraft Fee) in connection with each advance.

97.

On each occasion, such interest (Overdraft Fee) amounted to an APR in excess of 16%, and Synovus knew, on each occasion, that such interest (Overdraft Fee) amounted to an APR in excess of 16%.

98.

Georgia law prohibited Synovus from collecting from Plaintiffs interest at a rate in excess of 16% APR. Therefore, when Synovus collected the foregoing interest (Overdraft Fees), Synovus violated Georgia civil usury laws, and Synovus is required to forfeit and refund to Plaintiffs all of the interest (Overdraft Fees) Synovus has collected from Plaintiffs. O.C.G.A. § 7-4-10.

99.

In a pattern substantially identical to the foregoing facts in connection with Plaintiffs, Synovus advanced money to each Class Member, assessed and collected usurious interest from each Class Member and Synovus is required by Georgia law to likewise forfeit and refund to each Class Member all of the interest that Synovus has collected from each Class Member.

796693.1

## COUNT II
### Violation of Georgia's Criminal Usury Laws
### (On Behalf of Plaintiffs and all Class Members)

100.

Plaintiffs repeat paragraphs 1 through 99, above.

101.

As more fully set forth above and in connection with each advance by Synovus to Plaintiffs, Synovus expected and required Plaintiffs to repay the principal amount of the advance and pay interest (an Overdraft Fee). And, Synovus collected from Plaintiffs the principal amount of the advance and interest (an Overdraft Fee) in connection with each advance.

102.

On each occasion, such interest (Overdraft Fee) amounted to an MPR in excess of 5%. Indeed, in the case of Plaintiff Griner on one occasion such interest amounted to an MPR of 127,059%. And on one occasion in the case of Plaintiff Cohn, the interest amounted to an MPR of 31,672%. Synovus knew, on each occasion, that such interest amounted to an MPR in excess of 5%.

103.

Georgia law prohibited Synovus from collecting from Plaintiffs interest at a rate in excess of 5% MPR. Therefore, when Synovus collected the foregoing interest, Synovus violated Georgia criminal usury laws, and Synovus is required to forfeit and refund to Plaintiffs all of the interest (Overdraft Fees) that Synovus has collected from Plaintiffs.

104.

In a pattern substantially identical to the foregoing facts in connection with Plaintiffs, Synovus advanced Synovus's money to each Class Member, assessed and collected usurious

interest from each Class Member and Synovus is required by Georgia law to likewise forfeit and refund to each Class Member all of the interest (Overdraft Fees) that Synovus has collected from each Class Member.

### COUNT III
### Conversion
### (On Behalf of Plaintiffs and all Class Members)

105.

Plaintiffs repeat paragraphs 1 through 104, above.

106.

Plaintiffs owned personal property in the form of money on deposit at Synovus.

107.

Through the foregoing unlawful conduct, Synovus committed an unauthorized assumption and exercise of right of ownership over Plaintiffs' personal property (to-wit, Plaintiffs' money on deposit with Synovus) and unlawfully appropriated it.  Synovus also substantially and wrongfully interfered with Plaintiffs' right to possession of their personal property.  Synovus converted Plaintiffs' personal property for Synovus's use.

108.

Such unlawful taking of Plaintiffs' personal property by Synovus illegally deprived Plaintiffs of the use of their personal property.

109.

Synovus's unlawful conversion of Plaintiffs' personal property proximately caused Plaintiffs injury, including, but not limited to, interference with their ordinary and intended use of their personal property.

110.

In a pattern substantially identical to the foregoing facts in connection with Plaintiffs, Synovus unlawfully appropriated, and substantially and wrongfully interfered with, the personal property and property rights of each Class Member and Synovus's conversion of each Class Member's personal property proximately caused such Class Member injury, including, but not limited to, interference with his or her ordinary and intended use of his or her personal property.

111.

Plaintiffs, on behalf of themselves and all of the Class Members demanded that Synovus return the personal property of Plaintiffs and all Class Members.

112.

Synovus did not respond to Plaintiffs' demand, and Synovus has not returned the Plaintiffs' or the Class Members' personal property.

## COUNT IV
### Money Had and Received
### (On Behalf of Plaintiffs and all Class Members)

113.

Plaintiffs repeat paragraphs 1 through 112, above.

114.

Through its unlawful conduct, as described above, Synovus has received money of which Synovus is not the true owner, and which, in equity and good conscience, Synovus should not be permitted to keep.

115.

Plaintiff Thomas Griner is the true owner of money received by Synovus in connection with the unlawful conduct described above, including, but not limited to, charging and collecting

usurious interest on loans made by Synovus to Plaintiff Thomas Griner through the use of his Bank Card.

116.

By seizing Plaintiff Thomas Griner's money to collect usurious interest, Synovus has received money that in fact belongs to Plaintiff Thomas Griner and to which Synovus has no right.

117.

Plaintiff Fern Cohn is the true owner of money received by Synovus in connection with the unlawful conduct described above, including, but not limited to, charging and collecting usurious interest on loans made by Synovus to Plaintiff Fern Cohn through the use of her Bank Card.

118.

By seizing Plaintiff Fern Cohn's money to collect usurious interest, Synovus has received money that in fact belongs to Plaintiff Fern Cohn and to which Synovus has no right.

119.

Plaintiffs are entitled to recover in legal damages from Synovus the sums of money received by Synovus from each Plaintiff of which Synovus is not the true owner, and which, in equity and good conscience, Synovus should not be permitted to keep.  Plaintiffs are also entitled to applicable interest and all other remedies available under this claim.

120.

In a pattern substantially identical to the foregoing facts in connection with the Plaintiffs, Synovus received money from each Class Member of which Synovus is not the true owner, and

796693.1

30

which, in equity and good conscience, Synovus should not be permitted to keep. The Class Members are the true owners of such money.

### 121.

The Class Members are entitled to recover in legal damages from Synovus the sum of money received by Synovus of which Synovus is not the true owner, and which, in equity and good conscience, Synovus should not be permitted to keep. The Class Members are also entitled to applicable interest and all other remedies available under this claim.

### 122.

Plaintiffs, on behalf of themselves and all Class Members, have made a demand upon Synovus for repayment of the money received by Synovus in connection with the unlawful conduct, as described above.

### 123.

Synovus did not respond to Plaintiffs' demand for repayment, and Synovus has not repaid the money it received from Plaintiffs or the Class Members in connection with the unlawful conduct described above.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all Class Members whom they seek to represent, pray for the following relief –

1.     Trial by jury on all issues so triable;

2.     Judgment entered in favor of Plaintiffs and all Class Members and against Synovus in the amount to be determined by the jury at trial;

3.     Forfeiture and refund of all interest (Overdraft Fees and Overdraft Collection Fees) assessed and collected by Synovus in connection with Synovus's advance of its money to

796693.1

Plaintiffs and the Class Members in connection with Synovus's Automated Overdraft Program, which interest violated O.C.G.A. §§ 7-4-2(a)(2) and/or 7-4-18(a);

    4.     Actual damages;

    5.     Pre-judgment interest at the maximum rate permitted by applicable law; and

    6.     Such other relief as this Court deems just and proper.

DATED this the 27th day of August, 2010.

Respectfully submitted,

Michael B. Terry *[by GDJR w/express permission]*
Georgia Bar No. 702582
Steven J. Rosenwasser
Georgia Bar No. 614908
Jason J. Carter
Georgia Bar No. 141669
Mary W. Pyrdum
Georgia Bar No. 940420

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 W. Peachtree Street
Atlanta, Georgia 30309
Telephone:    404-881-4100
Facsimile:    404-881-4111
terry@bmelaw.com
rosenwasser@bmelaw.com
carter@bmelaw.com
pyrdum@bmelaw.com

Gerald Davidson, Jr.
Georgia Bar No. 206600

MAHAFFEY PICKENS TUCKER, LLP
1550 North Brown Road
Suite 125
Lawrenceville, GA 30043
Telephone:    770-232-0000
Facsimile:    678-518-6880
gdavidson@mptlawfirm.com

796693.1

32

C. Ronald Ellington
Georgia Bar No. 243800

C. RONALD ELLINGTON, ATTORNEY, PC
135 Beaver Trail
Athens, Georgia  30605
Telephone:    706-543-4684
rellington9@charter.net

J. Benjamin Finley
Georgia Bar No. 261504
MaryBeth V. Gibson
Georgia Bar No. 725843
M. Kathryn Rogers
Georgia Bar No. 482629

THE FINLEY FIRM, P.C.
2931 North Druid Hills Road
Suite A
Atlanta, Georgia  30329
Telephone:    404-320-9979
Facsimile:    404-320-9978
bfinley@thefinleyfirm.com
mgibson@thefinleyfirm.com
krogers@thefinleyfirm.com

*Attorneys for Plaintiffs*

796693.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2010, a true and correct copy of the foregoing **First Amended Complaint** was caused to be served on Synovus Bank through hand delivery on its registered agent:

> Corporation Service Company
> 40 Technology Parkway South
> #300
> Norcross, Georgia 30092

This 27th day of August, 2010.

Gerald Davidson, Jr.

796903.1